IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **COWBOY SPORTS AGENCY LLC** | § | |
| | § | |
| VS. | § | ACTION NO. 4:23-CV-810-P |
| | § | |
| UR M. JALLOU, ET AL. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

Pending before the Court are Plaintiff's Motion for Summary Judgment [doc. 11], filed November 3, 2023, and (2) Defendants' Cross Motion for Summary Judgment [doc. 14], filed November 17, 2023. Having carefully considered the motions and Plaintiff's consolidated response and reply, and the arguments presented at the hearing on December 12, 2023, the Court **FINDS** and **CONCLUDES** that Plaintiff's Motion for Summary Judgment should be **DENIED** and Defendants' Cross Motion for Summary Judgment should be **GRANTED**.[1]

### I. BACKGROUND

On August 8, 2022, Plaintiff Cowboy Sports Agency LLC filed an I-129 Petition for a Nonimmigrant Worker on behalf of Joao Otavio Pereira ("Pereira" or "beneficiary"). (Certified Administrative Record ("AR") [doc. 8] at 52-459.) On January 27, 2023, the United States Citizenship and Immigration Services ("USCIS") issued a Request for Evidence ("RFE"), which requested additional evidence, noting that the "initial record did not establish the beneficiary qualifies for P-1 nonimmigrant classification" for the following reasons:

- The record did not contain an explanation of the nature of the events or activities, the beginning and ending dates for the events or activities, and a

---

[1] The Court notes that on November 30, 2023, Plaintiff filed an Unopposed Motion for Expedited Order and Judgment [doc. 17] by December 15, 2023 due to the potential for negative impact upon Pereira if a ruling is not entered quickly. In an attempt to accommodate this request and get the case back to U.S. District Court Judge Mark Pittman as quickly as possible, the undersigned, while thoroughly considering all of the issues, has expeditiously and with as much brevity as possible written this Findings, Conclusions, and Recommendation

1

- copy of any itinerary for the events or activities as required by 8 C.F.R. 214.2(p)(2)(ii)(c);

- You have satisfied all of the conditions for an agent representing multiple employers and the beneficiary as defined in 8 C.F.R. 214.2(p)(2)(iv)(E)(2);

- The beneficiary is coming to the United States to participate in an athletic competition which has a distinguished reputation and which requires participation of an athlete or athletic team that has an international reputation as required in 8 C.F.R. [§] 214.2(p)(4)(ii)(A).

- The beneficiary qualifies as a[n] 'internationally recognized' athlete as defined by 8 C.F.R. [§] 214.2(p)(4)(ii) which requires:

  - A tendered contract with a major United States sports league or team, or a tendered contract in an individual sport commensurate with international recognition in that sport, if such contracts are normally executed in the sport as required in 8 C.F.R. [§] 214.2(p)(4)(ii)(B)(1).

  - The beneficiary meets at least two of the seven criteria set forth in 8 C.F.R. 214.2 [§] (p)(4)(ii)(B)(2).

(AR at 5 (Portion of USCIS July 5, 2023 Decision summarizing the RFE (AR at 26-33) (mistakes in original).)

On June 9, 2023, Plaintiff sent a response to the RFE, providing the USCIS with additional evidence and explanation to address each of the topics discussed in the RFE. (AR at 461-583.) On July 5, 2023, USCIS denied Plaintiff's I-129 Petition (hereinafter referred to as "decision" or "Denial Decision"), finding that Plaintiff had "not established that the beneficiary qualifies for classification under . . . section 101(a)(15)(P)(i)(a) of the Act." (AR at 12.) Specifically the USCIS found that Plaintiff failed to establish that Pereira: (1) "is coming to the United States to participate in an athletic competition which has a distinguished reputation and which requires participation of an athlete or an athletic team that has an international reputation as required in 8 C.F.R. [§] 214.2(p)(4)(ii)(A);" and (2) "qualifies as a[n] 'internationally recognized' athlete as defined by 8 C.F.R. [§] 214.2(p)(4)(ii) which requires [that t]he

2

beneficiary meets at least two of the seven criteria set forth in 8 C.F.R. [§] 214.2(p)(4)(ii)(B)(2)." (AR at 5-6; *see* AR at 2-13.)  Plaintiff seeks review of this decision under the Administrative Procedure Act, 5 U.S.C. § 702 et seq., arguing that USCIS' decision was unlawful, arbitrary, and capricious.  (Plaintiff's Brief in Support of Its Motion for Summary Judgment ("Pl.'s Br.") at 1.)

## II.   PARTIES' ARGUMENTS

### A.   Plaintiff's Arguments

In Plaintiff's Brief in Support of Its Motion for Summary Judgment, Plaintiff argues that the "USCIS misinterpreted and misapplied unambiguous statutory and regulatory provisions; failed to apply the appropriate 'preponderance of the evidence' standard of proof; failed to acknowledge and properly review relevant, probative evidence of record; required [Plaintiff] to comply with requirements which have no basis in statute or regulation; has not engaged in reasoned decisionmaking; has not articulated a satisfactory explanation for its actions or a rational connection between the facts of this case and the decision made; and has based its decisions on claims which run directly counter to the evidence of record."  (Pl.'s Br. at 1.) Specifically, Plaintiff argues that, pursuant to 8 C.F.R. § 214.2(p)(4)(ii)[(A)], it was required to submit evidence that Pereira will compete in "an athletic competition which has a distinguished reputation and which requires participation of **an athlete** . . . that has an international reputation."  (Pl.'s Br. at 8 (emphasis in original).)  Plaintiff argues that it did submit such evidence to USCIS and that USCIS "made two major legal errors in its denial of the I-129 Petition when claiming that the proposed athletic competition does not have a distinguished reputation."  (*Id*. at 9.)

First, Plaintiff claims that the "USCIS conducted an impermissibly narrow review of the evidence, which establishes that the proposed athletic competition has a distinguished reputation,

3

and USCIS ignored relevant, probative evidence that did not support its claim." (*Id*.) Plaintiff claims that the "regulatory definition of an athletic competition [set forth in 8 C.F.R. § 214.2(p)(3)] is very broad and "[w]here an entire tournament, tour, or season, has a distinguished reputation, there is no legal requirement for a P-1 petitioner to establish that each individual event within that tournament, tour, or season has—on its own—a distinguished reputation." (Pl.'s Br. at 9.)

Plaintiff asserts that the evidence of record shows, *inter alia*, the following: (1) the PRCA is the oldest and biggest rodeo-sanctioning body in the world, has more than 43 million fans, includes a membership of 4,727 cowboys as well as 1,195 contract personnel (performers and workers), and is committed to maintaining the highest standards in the industry (AR at 84-87, 492-95); (2) as set forth in a letter from Steve Knowles, the Director of Rodeo Administration for PRCA, that: (a) the PRCA, in its 78 years of existence, has had tremendous membership growth, exposure, media coverage, and sanctioned rodeos and each it awards an increased price payout to its athletes and (b) "Tie-Down Roping is a distinguished PRCA event requiring contestants to be of the highest caliber and skill to be successful" (AR 499); (3) Junior Nogueira, an athlete from Brazil, tied for second place in PRCA's National Finals Rodeo Playoff Series Standings in 2022 (AR at 93); (4) an International News article published on August 3, 2017 "details the international reputation of PRCA Tie-Down Roping and Team Roping competitors and the distinguished reputation of PRCA's athletic competitions" (AR 236-39); and (5) the PRCA's social media page on Facebook.com is liked by 713,687 people and followed by 824,852 people (AR 318). Plaintiff argues that the "evidence of record in this case establishes—well beyond the required preponderance of the evidence—that the athletic competition of Tie-Down Roping within the Professional Rodeo Cowboys Association (PRCA) has a distinguished reputation."

4

(*Id*. at 11.) Plaintiff claims that the USCIS has erroneously added "an additional requirement that a P-1 petitioner establish that each individual event within a distinguished athletic competition also—individually—have a distinguished reputation," which has no basis in the statute or the regulation. (*Id*. at 12.)

Second, Plaintiff argues that the USCIS erred in "requir[ing Plaintiff] to establish that the proposed athletic competition requires all of its athletes to have an international reputation." (Pl.'s Br. at 12.) Plaintiff claims that 8 C.F.R. § 214.2(p)(4)(ii)[(A)]² "does not require [Plaintiff] to prove that the athletic competition requires **all** of its participating athletes to have an international reputation." (*Id*.) Plaintiff states that this regulation "explicitly requires only that [Plaintiff] prove that the athletic competition requires the participation of **an** athlete (singular)—such as Mr. Pereira—that has an international reputation." (*Id*.) Plaintiff claims that, "[i]n its written decision, [the] USCIS has explicitly relied very heavily on the fact that come competitors in PRCA events work other jobs during the week and compete in nearby PRCA events on weekends." (Pl.'s Br. at 13.) Plaintiff argues that the "USCIS has added an additional requirement that **all** competitors within the athletic competition must be internationally recognized" and that "[t]his additional requirement has no basis in the statute or regulations." (*Id*. at 13-14.) Plaintiff claims that the "USCIS's insistence that Plaintiff meet this additional requirement constitutes reversible legal error." (*Id*. at 14.)

Plaintiff also argues that, in reviewing USCIS' stated basis for denying the I-129 Petition, it is clear that USCIS failed to examine and consider the relevant, probative evidence, misapplied the law to the facts of the case, has not engaged in "reasoned decisionmaking" and "based its

---

² The Court notes that Plaintiff actually cites to 8 C.F.R. § 214.2(p)(4)(ii)(B), which appears to be incorrect as section 214.2(p)(4)(ii)(A) contains the language requiring the "participation of an athlete . . . that has an international reputation." (*See* P.'s Br. at 12.)

5

decision on an unreasonable and erroneous interpretation of unambiguous statutory and regulatory provisions." (Pl.'s Br. at 14.)  In support, Plaintiff states:

> The evidence discussed above establishes that the PRCA is the oldest and biggest rodeo-sanctioning body in the world, sanctioning several hundred top-of-the-line rodeos throughout the United States and Canada; that almost 5,000 athletes from the United States, Australia, Brazil, Canada, Mexico, and beyond hold PRCA memberships; that more than 43 million people identify themselves as fans of the PRCA; that, in 2022, PRCA broadcasts reached over 20 million households in Brazil alone; and that Tie-Down Roping is a distinguished PRCA event requiring athletes to be of the highest caliber and skill to be successful.
>
> USCIS did not address or consider how this evidence applies to this issue when making its decision to deny the I-129 Petition.

(Pl.'s Br. at 14.)  Plaintiff asserts that, since the USCIS failed to properly consider all the evidence, the "USCIS's decision [denying] the I-129 Petition on these grounds is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law." (*Id.* at 15.)

Plaintiff next, citing to 8 C.F.R. § 214.2(p)(4)(ii)(B)(2), notes that the "federal regulations require that a P-1 petition include documentary evidence to satisfy at least two of a list of seven regulatory criteria." (Pl.'s Br. at 15.)  Plaintiff claims, based on the evidence submitted, that it has satisfied the fourth, fifth, sixth, and seventh regulatory criteria set forth in 8 C.F.R. §§ 214.2(p)(4)(ii)(B)(2)(iv)-(vii) and that the USCIS' decision to deny Plaintiff's I-129 Petition on these grounds "is arbitrary, capricious, and abuse of discretion, and otherwise not in accordance with law." (Pl.'s Br. at 17, 21, 23, 25; *see* Pl.'s Br. at 15-25.)  As to the fourth regulatory criteria, which requires a "written statement from an official of the governing body of the sport which details how the alien or team is internationally recognized," Plaintiff points to the letter from Knowles and two letters from Shane Hanchey, Executive and member of the Board of Directors for PRCA. (Pl.'s Br. at 15-17; *see* AR at 313, 499, 510.)  As to the fifth regulatory criteria, which requires a "written statement from a member of the sports media or a recognized

expert in the sport which details how the alien or team is internationally recognized," Plaintiff points to several written statements from several recognized experts in the sport that detail how Pereira is internationally recognized. (Pl.'s Br. at 17-21; *see* AR at 231, 272, 314, 315, 316, 504, 517, 522, 528.) As to the sixth regulatory criteria, which requires "[e]vidence that the individual or team is ranked if the sport has international rankings," Plaintiff references that Pereira was ranked 124th place in the PRCA's World Standings for Tie-Down Roping and 12th place in the PRCA's Rookie Standings for Tie-Down Roping for the 2022 season. (Pl.'s Br. at 21-23; *see* AR 538, 545-53.) Plaintiff also states that by August 8, 2022, when it filed the I-129 Petition on behalf of Pereira, the "2022 season was over 75% complete, Mr. Pereira had completed the great majority of his rodeos for the season already, and Mr. Pereira had earned over 80% of his season total earnings already." (Pl.'s Br. at 21-22.) As to the seventh regulatory criteria, which requires "[e]vidence that the alien or team has received a significant honor or award in the sport," Plaintiff references evidence in the record that it claims shows "Pereira has received significant honors and awards in this sport." (Pl.'s Br. at 23; *see* AR 66, 326-338, 355-447, 455-56, 510, 532-41, 543-68, 570-82.)

### B. Defendants' Arguments

Defendants, in their Cross Motion for Summary Judgment, argue that the "Court should grant summary judgment in favor of [Defendants] and deny [Plaintiff's] motion for summary judgment because, as a matter of law, USCIS' denial ("Denial") of [Plaintiff's] Form I-129, Petition for Nonimmigrant Worker . . . was not arbitrary or capricious." (Defendants' Memorandum in Support of Defendants' Cross Motion for Summary Judgment and in Opposition of Plaintiff's Motion for Summary Judgment ("Defs.' Memo.") at 1.) Defendants claim that the "record supports USCIS' determination that Plaintiff did not meet [its] burden to

establish eligibility because: (1) Mr. Pereira is not coming to the United States to participate in an athletic competition that has a distinguished reputation which requires participation of athletes with international reputation; and (2) Mr. Pereira is not an internationally recognized athlete. (*Id*.

Defendants claim that, "[w]hile the PRCA does sanction some internationally recognized rodeos, not all of their sanctioned rodeos are internationally recognized competitions with a distinguished reputation." (Defs.' Memo. at 7 (emphasis omitted).) In support, Defendants state:

> As part of the initial petition, [Plaintiff] submitted the entire PRCA schedule from July 2022 through January 2023, consisting of several hundred different rodeos. There was no indication at which events Mr. Pereira would compete. USCIS found that the evidence did not establish that Mr. Pereira "is qualified to participate in each event on the calendar and had been selected to compete in each event on the submitted calendar." USCIS acknowledged that some PRCA events such as the Wrangler National Finals Rodeo are distinguished competitions, and also correctly observed that the record did not establish that the beneficiary was qualified for such events. Nor did the record show that the beneficiary had been invited to participate in such events.
>
> While some events listed high payouts, the events on the submitted calendar included multiple events with total prize payouts of as little as $1. Most of the events listed on the calendar were events with small or nominal prize payouts. USCIS determined that these events were not of a distinguished reputation.

(Defs.' Memo. at 7-8 (internal citations omitted).) Defendants, referring to the USCIS Policy Manual ("Policy Manual") which they claim contains policy guidance on P-1A petitions, noted that the evidence submitted by Plaintiff "describing PRCA events indicated that many PRCA competitions involve competitors 'that work other jobs during the week and compete in nearby PRCA events on the weekends'" and that the "USCIS found the letters from PRCA did not address the wide disparity in level or competitors at PRCA events." (*Id*. at 8; *see* Defs.' Memo. at 3.))

As to Plaintiff's interpretation of the phrase "an athlete" in 8 C.F.R. § 214.2(p)(4)(ii)(A) that having "one different international athlete place second at the PRCA's National Rodeo Playoff Series Standings would meet the requirement of the regulation," Defendants state that, "[i]n the only other district court decision relating to P-1A athletes, the court held that having three internationally recognized soccer players, including USMNT legend Landon Donovan, within a league did not give a league a distinguished reputation which requires participation of athletes with international reputations." (Defs.' Memo. at 8-9 (citing *Blast v. Mayorkas*, -- F. Supp. 3d --, No. GLR-22-1878, 2023 WL 6307821, at *6 (D. Md. Sept. 28, 2023). Defendants claim that "Plaintiff's reading of the regulation also fails to consider the canon of statutory construction relating to singular and plural, including the Dictionary Act." (Defs.' Memo. at 9 (citing 1 U.S.C. § 1).

Defendants further state that, without information regarding which events Pereira would be competing in, it could not compare the PRCA events with each other and that it provided a rational connection between the facts presented and their decision that Plaintiff failed to show that Pereira was going to be competing in an athletic competition with a distinguished reputation. (Defs.' Memo. at 9.) Defendants claim that it "adequately explain[ed] the rationale behind the decision" and "followed the facts to the reasonable conclusion" that Plaintiff "did not demonstrate that Mr. Pereira was going to be competing in events at an internationally recognized level of performance such that they require the participation of international recognized athletes or teams within the context of legal authority governing the P-1A classification." (*Id*. at 10.)

Defendants also argue that Plaintiff "failed to demonstrate that Mr. Pereira meets the requisite evidentiary requirements to be an internationally recognized athlete." (Defs.' Memo. at

9

10 (emphasis omitted).) Defendants, noting that 8 C.F.R. § 214.2(b)(4)(ii)(B) requires Plaintiff to provide evidence of at least two of seven different types of documentation, states that the "documentation requirements are a separate step in the regulatory requirements." (*Id*.) Citing to the Policy Manual and *Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022), Defendants state "that submitting the evidence from the list does not ensure that the petition will ultimately be approved" and that Plaintiff failed to demonstrate that he met two of the seven regulatory criteria. (*Id*.) As to the fourth criteria set forth in 8 C.F.R. § 214.2(p)(4)(ii)(B)(2)(iv), Defendant argues that the letters from the PRCA officials fail to show how Pereira was internationally recognized at the time of filing his visa petition as they, *inter alia*, tended to focus on Pereira's potential and referenced that he won $13,000 in the 2022 season, while the top 50 professional tie-down ropers won between $374,736 and $34,782. (*Id.* at 11-12.)

As to the fifth criteria set forth in 8 C.F.R. § 214.2(p)(4)(ii)(B)(2)(v), Defendants claim that the "letters from the other rodeo professionals fail to show how Mr. Pereira is internationally recognized." (Defs.' Memo. at 12 (emphasis omitted).) Defendants argue that the "USCIS made a rational connection between the letters and the decision that the letters and media reports did not detail how Mr. Pereira was internationally recognized." (*Id*. at 13.)

As to the sixth criteria set forth in 8 C.F.R. § 214.2(p)(4)(ii)(B)(2)(vi), Defendants argue that "Pereira was not internationally ranked at the time of filing the petition, nor is he internationally ranked now." (Defs.' Memo. at 14 (emphasis omitted).) Defendants claim that, at the date of the filing of the original petition, there was no evidence of any rankings. Defendants argue that, while Plaintiffs submitted additional evidence showing that "Pereira finished the 2022 PRCA season ranked 12th in the 'Rookie Tie Down Roping Standings' [and

124th in the world], such standings "did not reflect where Pereira was ranked at the time of the filing." (*Id*.)

As to the seventh criteria set forth in 8 C.F.R. § 214.2(p)(4)(ii)(B)(2)(vii), Defendants claim that Plaintiff "failed to show that Mr. Pereira received significant honors or awards." (Defs.' Memo. at 14 (emphasis omitted).) Defendants argue that, while "Plaintiff submitted placings and photos of awards won by Mr. Pereira," the USCIS "found that the record failed to establish the significance of the awards and placings showed a 'high level of achievement in the field evidenced by a degree of skill and recognition substantially above that ordinarily encountered, to the extent that such achievement is renowned, leading, or well-known in more than one country.'" (Defs.' Memo. at 15 (quoting AR at 11).) Defendant claims that the regulations require significant honors or awards and that Plaintiff failed to show how any of Pereira's awards were significant, important, or how they compare to other awards in tie-down roping. (*Id*.)

### III.   LEGAL STANDARD

#### A.   Administrative Procedure Act

"The Administrative Procedure Act ('APA'), 5 U.S.C. § 701 *et seq*., in conjunction with the federal-question jurisdiction statute, provides the statutory basis for a court to review a final agency action." *Blast*, 2023 WL 6307821, at *3. The summary judgment standard set forth in Federal Rule of Civil Procedure 56, however, "does not apply because of the limited role of a court reviewing the administrative record." *Hospira, Inc. v. Burwell*, No. GJH-14-02662, 2014 WL 4406901, at *9 (D. Md. Sept. 5, 2014); *see Integrity Gymnastics & Pure Power Cheerleading, LLC v. United States Citizenship and Immigration Svcs.*, 131 F. Supp. 3d 721, 725 (S.D. Ohio 2015) (Under the APA, "when a district court is reviewing a final agency action, the

usual rules governing summary judgment do not apply.") Instead, summary judgment is the means by which the court decides as a matter of law whether "the administrative record permitted the agency to make the decision it did." *Hospira*, 2014 WL 4406901, at *9; *see Integrity Gymnastics*, 131 F. Supp. 3d at 725-26; *Blast*, 2023 WL 6307821, at *3.

As relevant here, the APA requires a reviewing court to:

> [H]old unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . . .

5 U.S.C. §§ 706(2)(A)-(D). The arbitrary and capricious standard requires a reviewing court to consider whether the agency:

> [R]elied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A court must uphold an action if the record shows that the agency had a rational basis for the decision; the court may not "substitute its judgment for that of the agency." *Motor Vehicle*, 463 U.S. at 43; *see Integrity Gymnastics*, 131 F. Supp. 3d at 726 ("The Court's task is not to substitute its judgment for that of the agency.") This is a "highly deferential standard which presumes the validity of the agency's action." *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 16 F.3d 1395, 1400 (4th Cir. 1993).

"[A]n agency is charged with the duty of examining the relevant data and articulating a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *United States v. Garner*, 767 F.2d 104, 116 (5th Cir. 1985) (quoting

*Motor Vehicle*, 463 U.S. at 43). "An agency's factual findings are reviewed under the 'substantial evidence' standard," which limits review to "determining whether the agency's factual findings are supported by substantial evidence on the record as a whole, not whether there was substantial evidence in the record for a result other than that arrived at by the agency." *Integrity Gymnastics*, 131 F. Supp. 3d at 726. "In sum, in order to survive summary judgment under the APA, the party seeking judicial review must point to facts or factual failings in the administrative record that indicate that the agency's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Integrity Gymnastics*, 131 F. Supp. 3d at 727. "If the plaintiff[ ] cannot do so, then the agency's decision stands." *Id.*

### B. Regulatory Framework

Plaintiff filed its Petition on behalf of Pereira under Form I-129, Petition for a Nonimmigrant Worker, to classify Pereira as an athlete under 8 U.S.C. 1101(a)(15)(P)(i)(a) of the Immigration and Nationality Act ("INA"). P-1 nonimmigrant status is available to an alien who performs as an athlete, individually or as a part of a group or team, at an internationally recognized level of performance, and seeks to enter the United States temporarily and solely for the purpose of performing as such an athlete with respect to a specific athletic competition. *See* 8 U.S.C. §§ 1101(a)(15)(P)(i)(a), 1184(c)(4)(A). Pursuant to 8 U.S.C. § 1101(a)(15)(P)(i)(a), a nonimmigrant athlete under the relevant P-1 category is a foreign national who is described in 8 U.S.C. 1184(c)(4)(A). As relevant here, section 1184(c)(4)(A) of title 8 states:

> For purposes of section 1101(a)(15)(P)(i)(a) of this title, an alien is described in this subparagraph of the alien—
>
> > (i)(I)   performs as an athlete, individually or as part of a group or team, at an internationally recognized[3] level of performance;

---

[3] "Internationally recognized" is defined as "having a high level of achievement in a field evidenced by a degree of skill and recognition substantially above that ordinarily encountered, to the extent that such achievement is renowned, leading, or well-known in more than one country." 8 C.F.R. § 214.2(p)(3).

> . . . .
>
> (ii)   seeks to enter the United States temporarily and solely for the purpose of performing—
>
>> (I)   as such an athlete with respect to a specific athletic competition;[4] . . . .

8 U.S.C. § 1184(c)(4)(A). As relevant here, the federal regulations promulgated to implement this statute provide:

> (4) Petition for an internationally recognized athlete . . . (P-1)—
>
> . . . .
>
> (ii) Criteria and documentary requirements for P-1 athletes—
>
>> (A)   General. A P-1 athlete must have an internationally recognized reputation as an international athlete . . . . The athlete . . . must be coming to the United States to participate in an athletic competition which has a distinguished reputation and which requires participation of an athlete . . . that has an international reputation.
>>
>> (B)   Evidentiary requirements for an internationally recognized team or athletic team. . . . A petition for an athlete who will compete individually or as a member of a U.S. team must be accompanied by evidence that the athlete has achieved international recognition in the sport based on his or her reputation. A petition for a P-1 athlete or athletic team shall include:
>>
>>> . . . .
>>>
>>> (2) Documentation of at least two of the following:
>>>
>>> . . . .
>>>
>>>> (iv)   A written statement from an official of the governing body of the sport which details how the alien or team is internationally recognized;

---

[4] "Competition, event, or performance" is defined as "an activity such as an athletic competition, athletic season, tournament, tour, exhibit, project, entertainment event, or engagement. . . . An athletic competition or entertainment event could include an entire season of performances. . . ." 8 C.F.R. § 214.2(p)(3).

>   (v) A written statement from a member of the sports media or a recognized expert in the sport which details how the alien or team is internationally recognized;
>
>   (vi) Evidence that the individual or team is ranked if the sport has international rankings; or
>
>   (vii) Evidence that the alien or team has received a significant honor or award in the sport.

8 C.F.R. § 214.2(p)(4)(ii).

## IV.  ANALYSIS

In this case, Plaintiff argues, in essence, that the USCIS committed legal errors in its denial of the Form I-129 Petition filed on behalf of Pereira. First, Plaintiff asserts that the USCIS erred by requiring Plaintiff to establish that each individual event within the PRCA's calendar has a distinguished reputation, which is not required by the broad regulatory definition of an athletic competition as set forth in 8 C.F.R. § 214.2(p)(3). (Pl.'s Br. at 9; *see also* Transcript of Hearing.)

The USCIS, in its Denial Decision, found that the evidence submitted by Plaintiff regarding the PRCA rodeos was insufficient because "the record did not establish that all of the events in [the] calendar satisf[ied] the common definition of distinguished and did not show which events on the calendar Pereira was qualified to participate in and had been selected to compete in." (AR at 6.) The USCIS also referred to evidence showing that some of the PRCA events involved competitors that "work other jobs during the week and compete in nearby PRCA events on weekends" as additional evidence that not all the PRCA rodeos on the calendar had a distinguished reputation. (*Id*.) The USCIS further stated that "[w]hile you have provided documentation that there are some distinguished competitions within the PRCA such as the

Wrangler National Finals Rodeo, the record did not establish that the beneficiary is qualified for such events or has ever qualified for such events." (*Id.*)

Contrary to Plaintiff's arguments, the USCIS, in its Denial Decision, was not requiring Plaintiff to establish that each individual event within the PRCA's calendar has a distinguished reputation. Instead, the USCIS, as required by the statutes and regulations, was ensuring that at least one of the events PRCA events that Pereira was actually going to compete in and was qualified to compete in had a distinguished reputation as required by the statutory and regulatory scheme. *See* 8 C.F.R. § 214.2(p)(4)(ii)(A). Because Plaintiff did not submit evidence which clarified and explained what PRCA events Pereira was going to compete in and that such event(s) were distinguished—even when given an additional opportunity to do so in the RFE—it was not arbitrary or capricious for the USCIS to deny Plaintiff's application on this ground. Consequently, the Court finds and concludes that Plaintiff's motion for summary judgment on this ground should be **DENIED**.

Second, Plaintiff argues that the USCIS legally erred, in violation of the statutory and regulatory scheme, in requiring Plaintiff to establish that the proposed athletic competition requires all of its athletes (as opposed to "an" athlete to have an international reputation). (Pl.'s Br. at 12-15; *see* 8 C.F.R. § 214.2(p)(4)(ii)(A).) In support of this argument, Plaintiff again refers to the portion of the USCIS' Denial Decision in which the USCIS referenced that some PRCA events involved competitors that "work other jobs during the week and compete in nearby PRCA events on weekends." (Pl.'s Br. at 12; *see* AR at 6.)

In its decision, as set forth above, the USCIS did refer to the fact that the PRCA events on the calendar submitted by Plaintiff involved professional as well as amateur competitors. (AR at. 6.) Contrary to Plaintiff's argument, however, the USCIS mentioned this fact, not as an

additional requirement, but as additional evidence that it could not determine whether Pereira was coming to the United States to participate in an athletic competition that had a distinguished reputation. The USCIS did not state in its decision that Plaintiff must provide evidence that the proposed athletic competition that Pereira would be participating in required **all** participating athletes to have a distinguished reputation. Thus, this portion of the USCIS' Denial Decision was not arbitrary and capricious. Consequently, the Court finds and concludes that Plaintiff's motion for summary judgment on this ground should be **DENIED**.

Next, Plaintiff argues that the USCIS erred in its Denial Decision by failing to find that Pereira had an international reputation. (Pl.'s Br. at 15-25.) Specifically, Plaintiff claims that the USCIS erred in not finding that Pereira met at least two of the seven criteria required to show that Pereira had achieved international recognition. (*Id*.) After reviewing the USCIS' Denial Decision, the Court finds that its decision regarding this issue was not arbitrary and capricious. The USCIS spent five pages analyzing the criteria set forth in 8 C.F.R. § 214.2(p)(4)(ii)(B)(2) and explained in detail why the evidence submitted by Plaintiff failed to meet each section. (AR at 7-11.) While Plaintiff does not like the reasons given by the USCIS, the USCIS supports its decision with specific reasons that are rationally supported by the evidence presented. Consequently, the Court finds and concludes that Plaintiff's motion for summary judgment on this issue should be **DENIED**.

As to Defendants' cross motion for summary judgment, the Court notes that in the USCIS' twelve-page decision, the USCIS carefully laid out the statutory and regulatory schemes applicable in the review of a P-1A athlete petition, identified the specific evidence submitted by Plaintiff with the Plaintiff's original petition as well as in response to the RFE, and rationally explained why it found such evidence insufficient to meet the regulatory and statutory scheme.

Taken as a whole, the USCIS' Denial Decision does not appear arbitrary, capricious, or unlawful as it examined the relevant evidence in detail and articulated a satisfactory explanation for its decision. Because the USCIS' Denial Decision is rationally connected to the evidence submitted, it is entitled to deference from this Court. Consequently, the Court finds and concludes that Defendants' cross motion for summary judgment should be **GRANTED**.

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment [doc. 11] be **DENIED** and Defendants' Cross Motion for Summary Judgment [doc. 14] be **GRANTED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to an action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation ("FCR") within fourteen (14) days after the party has been served with a copy of such FCR. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

**ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 27, 2023**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 13, 2023.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE